SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Tywaun S. Hedgespeth (A-22-20) (084892)**

**Argued October 13, 2021 -- Decided December 27, 2021**

**LaVECCHIA, J., writing for a unanimous Court.**

The Court addresses two alleged evidentiary errors. One relates to the issue resolved today in the companion appeal of State v. Carrion, ___ N.J. ___ (2021): whether admission of an affidavit from the New Jersey State Police, affirming that a defendant does not appear in the State's firearm permit database, violates the Confrontation Clause when the affiant does not testify at trial. The other issue is whether the trial court committed harmful error when it permitted the State to impeach defendant with a prior conviction under N.J.R.E. 609, even though that conviction occurred more than ten years before the trial.

While surveilling a street corner in Newark, two detectives observed several men loitering in the area. A detective testified that one of the individuals, later identified as defendant Tywaun S. Hedgespeth, adjusted his clothes, at which point officers saw what looked like the butt of a gun. Backup units were told to apprehend the men and to be cautious with defendant. A detective apprehended defendant, ordered him to show his hands, took him to the ground, and then alerted fellow officers that he found a weapon. Another detective recovered the weapon. A third detective read defendant his rights. Defendant was searched by the arresting officers who discovered crack cocaine on his person. No fingerprints were found on the gun.

In August 2017, defendant went to trial on a drug possession charge and an unlawful possession of a weapon charge. To address an element of the unlawful possession charge -- the lack of a firearm permit -- the State produced a witness who testified she oversaw a search of the Essex County gun records performed by her secretary, which returned no firearm permit for defendant.

At the close of the State's case, defense counsel advised the court that, to help defendant reach a decision on whether to testify, he required a ruling as to the admissibility of defendant's prior convictions, both of which involved drug offenses. Defense counsel contested their admissibility, citing remoteness under N.J.R.E. 609 and noting that the offenses dated back to 2001 and 2005. The trial court permitted the State to introduce the convictions for impeachment purposes, reasoning that the probationary

1

term for the 2005 conviction extended to within ten years of the trial and the 2001 conviction represented a continuing course of conduct. Defendant declined to testify.

Following defendant's decision not to testify, and over his objection, the State introduced testimony from Detective John Cosgrove of the Essex County Prosecutor's Office. Cosgrove was permitted to testify to the contents of an affidavit, sworn to by Detective Sergeant Brett Bloom of the Firearms Investigation Unit of the New Jersey State Police, which stated that defendant does not have a firearm permit on record with the State. Notably, the search was not conducted by Detective Cosgrove, and neither Bloom nor anyone else with responsibility for the State's database or search testified.

The jury found defendant guilty on both counts, and he pleaded guilty to a certain-persons offense the same day. The Appellate Division affirmed defendant's convictions. 464 N.J. Super. 421, 427 (App. Div. 2020). The Court granted certification, 244 N.J. 362 (2020), on the two issues identified by defendant: (1) whether the trial court committed harmful error in permitting impeachment of defendant by his prior convictions; and (2) whether the trial court erred in admitting an affidavit by a non-testifying officer.

**HELD:** A violation occurred when the State was allowed to enter into evidence information set forth in the affidavit of a non-testifying officer concerning the no-permit results from a search of the State firearm registry, and that violation was not cured by testimony concerning the search of an Essex County firearm database. Further, the trial court's incorrect N.J.R.E. 609 ruling constituted harmful error requiring reversal of the conviction. However, the Court declines to adopt the position that an evidentiary ruling that results in a defendant's decision not to testify can never be harmless.

1. The Court's decision in Carrion controls in this matter. When used in a criminal prosecution, an affidavit setting forth the results of a search of the State's firearm permit registry -- as evidence that a defendant lacks a firearm permit -- is testimonial for purposes of the Confrontation Clause. As such, if the right to confrontation is raised by the defendant, the person who conducted the search and created the affidavit must be produced unless a suitable substitute witness, such as one who witnessed or re-conducted the same search, is presented. See Carrion, ___ N.J. at ___ (slip op. at 17-20). (pp. 10-11)

2. Here, the affiant, Bloom, was not produced. Cosgrove was not a suitable replacement witness and could not fulfill the cross-examination requirement that the Confrontation Clause protects. The objections lodged by defense counsel were sufficient to preserve the issue, and the witness who requested the search of the County database could not address or eliminate the possibility that defendant had sought a permit in another county. Only the search of the State's database -- admitted in violation of the Confrontation Clause -- could eliminate that possibility; thus, the evidence from the county search cannot render that violation harmless. (pp. 11-12)

2

3. As for the error concerning the allowed impeachment based on defendant's prior convictions, the State agreed during oral argument that the prior convictions should not have been permitted to be introduced for impeachment purposes under N.J.R.E. 609. The focus in this appeal is whether that error can be harmless. (p. 13)

4. In Luce v. United States, the United States Supreme Court decided, under federal appellate procedure, that a defendant who does not testify is not entitled to appellate review of a ruling denying a motion to forbid the use of a prior conviction for impeachment. 469 U.S. 38, 39-40 (1984). The Court reasoned that allowing review in such circumstances "would result in the windfall of automatic reversal" because an "appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." Id. at 42. In State v. Whitehead, in interpreting N.J.R.E. 609, the Court rejected the reasoning in Luce. 104 N.J. 353, 357-59 (1986). The Whitehead Court did not share the concern of the United States Supreme Court that those difficulties would result in automatic reversals. Ibid. Thus, according to Whitehead, it is not imperative that a defendant testify as a prerequisite to making an in limine N.J.R.E. 609 ruling reviewable on appeal. In reaching that decision -- and thus rejecting Luce's "windfall" concern -- the Court implicitly recognized that there can be situations, although likely unusual, in which an erroneous N.J.R.E. 609 ruling may be harmless even if that ruling resulted in the defendant's deciding not to testify. See ibid. (pp. 13-18)

5. The clear import of Whitehead is that this Court believed that there can be situations in which a defendant's decision not to testify after an erroneous N.J.R.E. 609 ruling will not constitute harmful error. The Court continues to hold to the correctness of that view, although it again recognizes that cases in which such error is found to be harmless may be few in number. The doctrine of harmless error is specifically well equipped for dealing with the type of error defendant has alleged. If the Court were to hold that the situation amounts to structural error, it would effectively re-classify any erroneous evidentiary ruling that has the effect of pushing a defendant to strategically choose not to testify as structural error. Such a rule would lead to untenable results. In limine N.J.R.E. 609 rulings shall continue to be reviewed under the harmless-error standard. (pp. 18-20)

6. The trial court's N.J.R.E. 609 ruling in this case was harmful. The Court explains why the jury's failure to hear defendant's testimony could have produced an unjust result in this case, stressing that defendant was unable to effectively counter the State's theory of the case and that the State's only evidence linking defendant to the gun was officer testimony. (pp. 20-21)

**REVERSED and REMANDED for new proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.**

3

# SUPREME COURT OF NEW JERSEY

## A-22 September Term 2020

## 084892

State of New Jersey,

Plaintiff-Respondent,

v.

Tywaun S. Hedgespeth, a/k/a
Tywaune Hedgespeth,
Tywuan Hedgespeth,
Tywaun Hedgspeth, and
Tavon James,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
464 N.J. Super. 421 (App. Div. 2020).

| Argued | Decided |
|---|---|
| October 13, 2021 | December 27, 2021 |

Whitney F. Flanagan, First Assistant Deputy Public
Defender, argued the cause for appellant (Joseph E.
Krakora, Public Defender, attorney; Whitney F.
Flanagan, of counsel and on the briefs).

Lucille M. Rosano, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
respondent (Theodore N. Stephens, II, Acting Essex
County Prosecutor, attorney; Lucille M. Rosano, of
counsel and on the briefs).

1

Matthew E. Frisch argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Matthew E. Frisch, of counsel and on the brief).

Valeria Dominguez, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Valeria Dominguez, of counsel and on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

In this appeal, we address two alleged evidentiary errors in the Appellate Division's affirmance of defendant's convictions.  See State v. Hedgespeth, 464 N.J. Super. 421 (App. Div. 2020).  One relates to the confrontation issue resolved today in the companion appeal of State v. Carrion, ___ N.J. ___ (2021):  whether admission of an affidavit from the New Jersey State Police, affirming that a defendant does not appear in the State's firearm permit database, violates the Confrontation Clauses of both the State and Federal Constitutions when the affiant does not testify at trial.

We conclude that a violation occurred when the State was allowed to enter into evidence information set forth in the affidavit of a non-testifying officer concerning the no-permit results from a search of the State firearm registry.  We reject the alternative argument that testimony concerning the search of an Essex County firearm database renders harmless the error with

respect to the State database. The search of a county database is not the same as a search of the State database; thus, its admission into evidence does not cure the erroneous admission of the results of the State database search.

The other issue concerns whether the trial court committed harmful error when it permitted the State to impeach defendant with a prior conviction under N.J.R.E. 609, even though that conviction occurred more than ten years before the trial. The trial court reasoned that the conviction was not too remote because the sentence's probationary term extended within the ten-year window for remoteness. Although the State does not dispute defendant's claim of error in the trial court's remoteness analysis, it argues that the evidentiary ruling was not harmful under the circumstances despite the fact that defendant declined to testify after the court's ruling. We disagree.

We conclude that the trial court's incorrect N.J.R.E. 609 ruling constituted harmful error requiring reversal of the conviction. In so holding, however, we decline to adopt defendant's position that an evidentiary ruling that results in a defendant's decision not to testify can never be harmless.

Accordingly, the judgment of the Appellate Division is reversed.

I.

In 2017, defendant Tywaun S. Hedgespeth was convicted by a jury of unlawful possession of a controlled dangerous substance (CDS), contrary to

3

N.J.S.A. 2C:35-10(a)(1), and unlawful possession of a weapon without a permit, contrary to N.J.S.A. 2C:39-5(b)(1).  Briefly, as recounted at trial, the facts leading to his charges stem from surveillance conducted by the Essex County Sheriff's department.

While surveilling a street corner in Newark, two detectives observed several men loitering in the area.  One of the individuals, later identified as defendant, was described as a "black man, medium brown skin, wearing a black do-rag, a black puffy ski-type vest, a black hooded sweatshirt, black workpants, and . . . black boots."  Detective Ozzie Ryals testified to watching defendant walk back and forth a few times before he appeared to urinate on the side of a building, and then, when finished, "as he was fixing himself and adjusting his clothes, [the Detectives] observed what [they] thought to be the butt of a gun."

As the detectives were in communication with other members of their unit "via radio and cellphone," Ryals reported the gun to the backup team via radio, but at trial he could not recall what channel he used and acknowledged it may have been via cell phone.  The backup units, already in position, were told to go in and apprehend all the men and to be cautious with defendant.[1]

---

[1]  During trial, tapes of the recorded channel indicate that as Detective Ryals ordered other units to "grab all of 'em," his partner, Detective Rickards, added "[a]nd they had a weapon over here."

The backup team went to the scene. Detective Jimmy Bradley apprehended defendant, ordered defendant to show his hands, took defendant to the ground, and then alerted fellow officers that he found a weapon. Detective Angel Colon recovered the weapon. A third detective read defendant his rights. Neither of the surveilling detectives went to the scene where defendant was apprehended and the gun was allegedly found.

Defendant was searched by the arresting officers who discovered what was later determined to be crack cocaine on his person. Later, the gun and magazine were tested, but no fingerprints were found on either.

Defendant was indicted for various CDS and weapons charges.[2] In August 2017, he went to trial on the possession of CDS charge and the unlawful possession of a weapon charge.

The officers testified, as summarized, about the circumstances of the surveillance of the corner, followed by the apprehension of defendant by the

_____

[2] Essex County Indictment Number 2016-07-2215 charged defendant with possession of CDS, contrary to N.J.S.A. 2C:35-10(a); possession of CDS with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and -5(b)(3); possession of CDS with intent to distribute within 1,000 feet of a school, contrary to N.J.S.A. 2C:35-5 and -7(a); possession of CDS with intent to distribute within 500 feet of a public building, contrary to N.J.S.A. 2C:35-7.1(a); possession of a firearm in the course of possessing CDS with intent to distribute, contrary to N.J.S.A. 2C:39-4.1(a); and possession of a firearm without a permit, contrary to N.J.S.A. 2C:39-5(b). A separate indictment added a certain-persons charge. See N.J.S.A. 2C:39-7(b).

5

backup unit officers. To address an element of the unlawful possession charge -- the lack of a firearm permit -- the State produced Deborah Despotovich, Criminal Division Manager of the Superior Court of New Jersey. According to her testimony, she oversaw a search of the Essex County gun records performed by her secretary, which returned no firearm permit for defendant.

At the close of the State's case, defense counsel advised the court that, to help defendant reach a decision on whether to testify, he required a ruling as to the admissibility of defendant's prior convictions, both of which involved CDS offenses. Defense counsel contested their admissibility, citing remoteness under N.J.R.E. 609[3] and noting that the offenses dated back to 2001 and 2005. For the 2001 conviction, defendant received a three-year custodial term. For the 2005 conviction, defendant was sentenced to a four-year probationary term with no custodial term.

---

[3] Under N.J.R.E. 609, a witness's credibility may be impeached by introducing a prior conviction of that witness. When the witness being impeached is a criminal defendant, the prosecution is limited in the manner it may introduce that conviction. See N.J.R.E. 609(a)(2)(B). Use of a prior conviction is even further limited "[i]f, on the date the trial begins, more than ten years have passed since the witness's conviction for a crime or release from confinement for it, whichever is later." N.J.R.E. 609(b)(1). When a conviction is ten years remote, as was asserted by the defense at trial, it "is admissible only if the court determines that its probative value outweighs its prejudicial effect, with the proponent of the evidence having the burden of proof." Ibid.

The trial court permitted the State to introduce the convictions for impeachment purposes, reasoning that the probationary term for the 2005 conviction extended to within ten years of the trial and the 2001 conviction represented a continuing course of conduct. The trial court required that the convictions be "sanitized" to exclude the details of the offense and permitted the State to refer to the date of conviction and sentence imposed. Defendant thereupon declined to testify and added that he believed his counsel's cross-examination of the State's witnesses was ineffective. In making his representations to the court in colloquy when declining to testify, defendant disputed the facts as recounted by the officers who testified at trial.

Following defendant's decision not to testify, and over his objection, the State reopened its case to introduce testimony from Detective John Cosgrove of the Essex County Prosecutor's Office. Detective Cosgrove was permitted to testify to the contents of an affidavit, sworn to by Detective Sergeant Brett Bloom of the Firearms Investigation Unit of the New Jersey State Police, which stated that defendant does not have a firearm permit on record with the State (the "no-permit affidavit"). Notably, the State firearm registry search was not conducted by Detective Cosgrove,[4] and neither Bloom nor anyone else

---

[4] The record reveals that Derrick Westry, an investigative aide in Cosgrove's office, made the request. Mr. Westry did not testify.

with responsibility for the State database or the specific search for defendant's name testified at trial. The defense asserted that the State was "asking to admit this without any witness or foundation." And, at the conclusion of the defense's cross-examination of Detective Cosgrove, counsel renewed his objection to the admission of the affidavit based on lack of foundation and lack of personal knowledge by the only witness testifying about the affidavit: Cosgrove.

On August 10, 2017, the jury found defendant guilty on both counts. The same day, defendant pleaded guilty to a certain-persons offense. The trial court imposed an aggregate sentence of eight years' imprisonment with a five-year period of parole ineligibility.

On appeal, the Appellate Division affirmed defendant's convictions. Hedgespeth, 464 N.J. Super. at 427. Although defendant raised five issues before the Appellate Division, only two are before this Court on certification: (1) whether the trial court committed harmful error in permitting impeachment of defendant by his prior convictions; and (2) whether the trial court erred in admitting an affidavit by a non-testifying officer.

The Appellate Division determined that the use of defendant's prior convictions for impeachment constituted error, id. at 437,[5] a determination the State does not presently challenge. However, the Appellate Division held that -- because "the State's evidence was so strong that had defendant testified, there was no real possibility that the jury would have reached a different result," and because the trial court issued a limiting instruction -- the erroneous ruling was harmless and did not require reversal. Id. at 438.

The Appellate Division also rejected defendant's argument that admission of the no-permit affidavit without Bloom's testimony violated the

[5] The Appellate Division reasoned that application of N.J.R.E. 609's presumption against admissibility depended on whether defendant's four-year probation imposed for his 2005 conviction was a term of "confinement." Id. at 429-31. Relying on the plain language of N.J.R.E. 609(b)(1), interpretation of analogous provisions by federal and state courts, and previous "interpretation of confinement in both related and unrelated contexts," the appellate court concluded "that probation does not qualify as confinement under N.J.R.E. 609(b)(1)" and that the presumption against admissibility applied. Id. at 432-36. We also note that several federal courts have consistently interpreted Fed. R. Evid. 609's analogous language in the same way the Appellate Division did. See, e.g., United States v. Stoltz, 683 F.3d 934, 939 (8th Cir. 2012); United States v. Rogers, 542 F.3d 197, 201 (7th Cir. 2008); United States v. Daniel, 957 F.2d 162, 168 n.4 (5th Cir. 1992).

Based on its interpretation of the Rule's requirements, the Appellate Division found that an abuse of discretion had occurred, explaining that the trial court's ruling was erroneously based on "N.J.R.E. 609(a)'s less stringent standard [and not on] the N.J.R.E. 609(b)(2) factors." Id. at 437. Accordingly, the appellate court held that "the judge's evidentiary ruling constituted a mistaken exercise of discretion." Ibid.

9

Rules of Evidence and the Confrontation Clause. Id. at 438-45. It concluded that the affidavit was "admissible under the hearsay rules," pursuant to N.J.R.E. 803(c)(7) and N.J.R.E. 902(a) and (k). Id. at 440. And, as to the confrontation issue, the court held that Bloom's "'no-permit' affidavit is not testimonial." Id. at 443-45. "Because the affidavit is not testimonial," the court reasoned, "its admission without Bloom's testimony did not violate the Confrontation Clause." Id. at 445.

We granted certification on the two issues identified by defendant. 244 N.J. 362 (2020).

## II.

We address first the confrontation issue and state simply that our holding in Carrion controls in this matter.

In Carrion, we held that, when used in a criminal prosecution, an affidavit setting forth the results of a search of the State's firearm permit registry -- as evidence that a defendant lacks a firearm permit -- is testimonial for purposes of the Confrontation Clause. ___ N.J. at ___ (slip op. at 18-20). As such, if the right to confrontation is raised by the defendant, the person who conducted the search and created the affidavit must be produced unless a suitable substitute witness, who personally witnessed or re-conducted the same

10

search, is presented. See id. at ___ (slip op. at 17-18); State v. Bass, 224 N.J. 285, 316-19 (2016).

Here, the affiant, Bloom, was not produced and Cosgrove was not a suitable replacement witness. Cosgrove had no knowledge about the State database's entries or the manner in which the search for defendant among firearm registrants was conducted. Simply put, he could not fulfill the cross-examination requirement that the Confrontation Clause protects.

The State contends that defendant did cross-examine the witness produced; however, that argument misses the point. The Confrontation Clause entitles the defendant to cross-examine not just any witness, but the correct witness, i.e., the witness who made a "testimonial" statement. See Bass, 224 N.J. at 316-19. Detective Cosgrove did not perform the search. He only repeated Bloom's conclusions. He could only say the search was done. The mere fact that defense counsel cross-examined Cosgrove, a plainly insufficient witness, does not fulfill the promise of the Confrontation Clause.

To the extent that the arguments on this issue mirror the arguments presented in Carrion, we rely on our analysis in that matter to resolve the issue here. We add only the following. The objections lodged by defense counsel were sufficient to preserve the issue, as we have recognized in the past. See State v. Wilson, 227 N.J. 534, 543-44 (2017) (holding that defendant's

11

objection to a map's admission on grounds of form and content -- hearsay and the adequacy of a witness to provide the foundation for the map's admission -- reasonably constituted a sufficient Confrontation Clause challenge). Thus, we reject the State's argument that there was not a proper objection by defendant.

The State further asserts, in the alternative, that any confrontation error was harmless because it produced the testimony of a witness who requested the search of an Essex County database. This argument is unpersuasive because that witness could not address or eliminate the possibility that defendant had sought a permit in another county. Only the search of the State's comprehensive database, which was admitted in violation of the Confrontation Clause, could eliminate that possibility; thus, the evidence from the search of the Essex County database cannot be said to render that violation harmless.[6]

For the reasons more fully explained in Carrion, we are constrained to find that defendant's right to confrontation was violated.

---

[6] Indeed, the witness produced with respect to the Essex County database also could say only that a search of the Essex County database was conducted but could not provide more detail about the search.

12

III.

A.

As for the error concerning the allowed impeachment based on defendant's prior convictions, we note that the State agreed during oral argument that the prior convictions should not have been permitted to be introduced for impeachment purposes under N.J.R.E. 609.[7] The focus in the appeal before us is tailored to whether that error can be harmless.

1.

According to defendant, an erroneous ruling that pushes a criminal defendant not to testify can never be harmless. Defendant contends that harmless-error rehabilitation is not possible when fundamental rights, like a defendant's right to testify on his or her own behalf, are denied. As support, he cites language from Luce v. United States, 469 U.S. 38, 42 (1984), and this Court's decision in State v. Whitehead, 104 N.J. 353, 359 (1986), that he argues acknowledge the difficulty of conducting a harmless error analysis in situations like his. Defendant further asserts that his own testimony would

---

[7] As noted, the Appellate Division found that it was error for the trial court to admit the prior convictions under N.J.R.E. 609 but concluded that the error was ultimately harmless. Hedgespeth, 464 N.J. Super. at 437-38. The State did not file a cross-petition seeking reversal of the Appellate Division's interpretation of N.J.R.E. 609, nor does it challenge that holding in its briefs filed in opposition to defendant's appeal.

have been significant to his defense and that the evidence against him was not so overwhelming that the jury would have still returned a guilty verdict.

Amicus curiae, the Association of Criminal Defense Lawyers of New Jersey (ACDL), agrees with defendant, contending that the right to testify on one's own behalf is integral to the right to present a defense. Interference with that right, amicus argues, is "structural error." In the ACDL's view, a per se rule requiring a new trial in these situations would respect the great weight juries place on a defendant's testimony.

2.

The State supports the Appellate Division's conclusion that the error that occurred here was harmless, stressing that, since our decision in Whitehead, courts of this state have consistently applied a harmless-error analysis in like situations. The State further contends that its evidence at trial would not have been defeated by defendant's testimony. Rather, the State asserts that the two officers' consistent descriptions of defendant at the scene and the recovery of a gun at defendant's precise location was strong evidence. The State also relies on the instruction by the trial court, directing the jury not to consider defendant's failure to testify.

The Attorney General supports the Appellate Division's determination. The Attorney General argues that the Whitehead decision adopted the

14

harmless-error analysis, notwithstanding the difficulty in conducting such an analysis, and cites decisions that have applied a harmless-error review in similar circumstances.[8]

B.

We begin with defendant's and the ACDL's argument that an evidentiary ruling resulting in a criminal defendant's decision to not testify can never be harmless.

In Chapman v. California, the United States Supreme Court fashioned a "harmless-constitutional-error rule" but also recognized "that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." 386 U.S. 18, 23 (1967). Such rights, according to the Chapman Court, included the right against coerced confession, the right to counsel, and the right to an impartial judge. Id. at 23 n.8.

The Supreme Court later labeled such constitutional errors as "structural defect." Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991). In Fulminante, the Court articulated that violations of the right to counsel or to an impartial judge constitute "structural defects in the constitution of the trial mechanism,

---

8  State v. Frost, 158 N.J. 76 (1999); State v. R.J.M., 453 N.J. Super. 261 (App. Div. 2018); State v. Singleton, 308 N.J. Super. 407 (App. Div. 1998).

15

which defy analysis by 'harmless-error' standards." Id. at 309. The Court explained that

> [t]he entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by the presence on the bench of a judge who is not impartial. Since our decision in Chapman, other cases have added to the category of constitutional errors which are not subject to harmless error the following: unlawful exclusion of members of the defendant's race from a grand jury; the right to self-representation at trial; and the right to public trial.
>
> [Id. at 309-10 (citations omitted).]

Defendant and the ACDL ask us to classify as structural error any trial court ruling, like the one in this appeal, that may cause a defendant not to testify when he otherwise wishes to. They rely in part on Luce, 469 U.S. at 41-43.

There, the United States Supreme Court decided, under federal appellate procedure, that a non-testifying defendant is not entitled to appellate review of a trial court's Fed. R. Evid. 609 "ruling denying [a] motion to forbid the use of a prior conviction to impeach [the defendant's] credibility." Id. at 39-40. In making that decision, the Court reasoned in part -- and in language heavily relied upon by defendant and the ACDL -- that allowing review in such circumstances "would result in the windfall of automatic reversal" because an "appellate court could not logically term 'harmless' an error that

16

presumptively kept the defendant from testifying." Id. at 42. Thus, the Supreme Court held that a defendant must testify to preserve the possibility of claiming improper impeachment and that a non-testifying defendant, like defendant here, would not even be entitled to a substantive appellate review of the trial court's evidentiary ruling itself.

In Whitehead, where we interpreted our own N.J.R.E. 609, we rejected the reasoning in Luce. 104 N.J. at 357-59. Instead, we determined that an in limine N.J.R.E. 609 ruling could be reviewed on appeal notwithstanding the defendant's decision not to testify at trial. Id. at 359. We found a "[d]efendant's testimony is unnecessary" either "for a trial court to make the discretionary determination on the admissibility of prior convictions" or "for an appellate court to review the trial court's exercise of discretion" with respect to such rulings. Ibid.

The Whitehead Court acknowledged "the difficulty of characterizing as harmless a trial court's error in ruling that the defendant's prior convictions may be used for impeachment purposes," but it did not share the concern of the United States Supreme Court that those difficulties would result in automatic reversals. Ibid. Rather, this Court found that worry to be "misplaced, at least insofar as its effect on the administration of justice in this state is concerned." Id. at 359-60.

Thus, according to <u>Whitehead</u>, it is not imperative that a defendant testify as a prerequisite to making an in limine N.J.R.E. 609 ruling reviewable on appeal. In reaching that decision -- and thus rejecting <u>Luce</u>'s "windfall" concern -- this Court implicitly recognized that there can be situations, although likely unusual, in which an erroneous N.J.R.E. 609 ruling may be deemed harmless even if that ruling resulted in the defendant's deciding not to testify. <u>See</u> <u>ibid.</u>

## C.

We find the defense's reliance on <u>Luce</u> and <u>Whitehead</u> misplaced. Defendant and the ACDL have crafted an argument that has effectively turned the analysis in <u>Luce</u>, and this Court's rejection of that analysis in <u>Whitehead</u>, on its head. If this Court were to accept defendant's and the ACDL's arguments, we would not be following <u>Whitehead</u>, as they urge us to; rather, we would, in effect, be undermining the reasoning of that very opinion.

The clear import of <u>Whitehead</u> is that this Court believed that there <u>can</u> be situations in which a defendant's decision not to testify after an erroneous N.J.R.E. 609 ruling <u>will not</u> constitute harmful error. The other side of that coin is that this Court did not believe that type of evidentiary error rose to the level of structural error. We continue to hold to the correctness of that view

18

although we again recognize that cases in which such error is found to be harmless may be few in number.

We add that the doctrine of harmless error is specifically well equipped for dealing with the type of error defendant has alleged. The error committed by the trial court was an evidentiary ruling. The court did not deny defendant the right to testify.[9] Rather, the court improperly determined that specific past-convictions evidence could be admitted, and, in light of that determination, defendant chose not to testify.

Defendant's choice not to testify was likely a ramification of the erroneous evidentiary ruling. But such ramifications are precisely what the harmless-error analysis is designed to consider: it asks whether an alleged trial error made a difference in the case, such as by prompting particular strategic responses by the parties. If we were to hold that the situation amounts to structural error, it would effectively re-classify any erroneous evidentiary ruling that has the effect of pushing a defendant to strategically choose not to testify as structural error. Such a rule would lead to untenable results.

---

[9] The Supreme Court has made clear that denials of the right to testify are constitutionally impermissible. See Rock v. Arkansas, 483 U.S. 44 (1987) (vacating as an improper, blanket denial of the right to testify -- among other constitutional infirmities -- a state's per se rule that a defendant could not testify after having undergone hypnosis therapy to remember the events of a case).

19

Accordingly, we hold that in limine N.J.R.E. 609 rulings shall continue to be reviewed under the harmless-error standard.

Last, we conclude that the trial court's N.J.R.E. 609 ruling in this case was harmful. To determine whether admission of evidence constitutes harmless error, the relevant inquiry is whether the purported error "is of such a nature as to have been clearly capable of producing an unjust result." State v. Kuchera, 198 N.J. 482, 501 (2009) (quoting State v. Castagna, 187 N.J. 293, 312 (2006)); see also State v. Ingram, 196 N.J. 23, 49 (2008) ("[T]he harmless-error standard . . . requires that there be some degree of possibility that the error led to an unjust result." (quoting State v. R.B., 183 N.J. 308, 330 (2005))).

Here, the jury's failure to hear defendant's testimony could have produced an unjust result. The key testimony against defendant was that of two police officers who testified that they saw the gun in defendant's waist band and that a gun was later recovered by other officers near where defendant and others were apprehended. The State introduced the gun itself into evidence; however, there was no fingerprint or DNA evidence on the gun.

Had the trial court not erroneously admitted the prior convictions, defendant argues he could have more forcefully challenged the detectives' credibility as to whether they saw the gun on his waistband. By not testifying,

defendant was only able to cast doubt on the officers' accounts through cross-examination; he was unable to effectively offer a counter theory of the case. Moreover, the jury was not able to consider Hedgespeth's demeanor and credibility in delivering his theory of the case. See State v. Scott, 229 N.J. 469, 484-85 (2017).

No doubt, the strongest evidence against defendant is that the State produced the gun in evidence. But, without indisputable evidence linking defendant to the gun -- except through officer testimony -- the admission of the gun did not necessarily cement the State's case against defendant. The mere fact that the State may characterize a potential defense theory seeking to explain away the gun as "implausible" is not reason to hold that the trial court's error was harmless. Ibid. Determining implausibility "is in the sole province of the jury. Judges should not intrude as the thirteenth juror." Id. at 485.

## IV.

For the foregoing reasons, the judgment of the Appellate Division is reversed, and the matter is remanded for new proceedings.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.

21